UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMIE MARGARET MIDWOOD, | No. 2:24-cv-1668 AC |
| Plaintiff, | |
| v. | ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), upholding a reduction in Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381-1383f, by the full amount of said SSI from April 2016 to November 2021, due to In-Kind Support and Maintenance ("ISM").[1] For the reasons that follow, the court will DENY plaintiff's motion for summary judgment, and GRANT the Commissioner's cross-motion for summary judgment.

////

////

---

[1] SSI is paid to financially needy disabled persons. 42 U.S.C. § 1382(a); <u>Washington State Dept. of Social and Health Services v. Guardianship Estate of Keffeler</u>, 537 U.S. 371, 375 (2003) ("Title XVI of the Act, § 1381 *et seq.*, is the Supplemental Security Income (SSI) scheme of benefits for aged, blind, or disabled individuals, including children, whose income and assets fall below specified levels . . .").

1

I. PROCEDURAL BACKGROUND

On May 28, 2021, following remand from the Eastern District of California, ALJ Daniel Myers presided over a telephonic hearing on plaintiff's application for SSI under Title XVI. Administrative Record ("AR") 50-63 (transcript), 183.[2] On July 7, 2021, the ALJ issued a favorable decision finding plaintiff disabled under Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A). AR 183-88 (decision). On September 3, 2021, the Social Security Administration ("SSA") assessed plaintiff's monthly SSI benefit as $690.96, effective October 2021. AR 201. On January 29, 2022, the SSA increased the SSI amount to $1,040.21, effective March 2022. AR 229.

On July 27, 2022, the SSA sent plaintiff notice that it had recalculated her SSI from April 2016 based on income she received in the form od "[a]ssistance with your food and/or shelter related expenses." AR 233-34. The SSA also informed plaintiff that it was withholding and redirecting amounts she had agreed in writing to repay Butte County Social Services from 2016 to 2021. AR 234. Her monthly income was therefore reduced to various amounts from April 2016 to August 2021. AR 234-35.

In August 2022, plaintiff requested reconsideration of the SSI reduction. AR 14, 243. As to the assertion that "[a]ssistance with your food and/or shelter related expenses" constituted ISM, she asserted that she had promised to repay her parents for any such support she received while waiting to become eligible for SSI. AR 14, 234, 243. In December 2022, the SSA denied her request because "per SI 00835.482 Sec B Item 2 'a bona fide loan did not exist at the time of [her] application[.]'" AR 14, 244. On August 31, 2023, ALJ Jennifer Smiley presided over a telephonic hearing on plaintiff's challenge to the reduction. AR 26-49 (transcript). Plaintiff appeared with John Johnson as counsel and testified at the hearing. AR 26-27, 32. Mrs. Lura Midwood, plaintiff's mother, also testified. AR 41.

On September 13, 2023, ALJ Smiley issued an unfavorable decision, finding plaintiff had received ISM that merited a reduction in SSI benefits from April 2016 through November 2021. AR 14-21 (decision), 22-25 (exhibit list). On May 28, 2024, after receiving plaintiff's Request

---

[2] Two copies of the AR are electronically filed as ECF Nos. 13-1 and 13-2 (AR 1 to AR 357).

1  for Review as Exhibit 30B, dated November 6, 2023, the Appeals Council denied plaintiff's
2  request for review, leaving the ALJ's decision as the final decision of the Commissioner of Social
3  Security.  AR 1-3 (decision), 4-5 (exhibit list).
4       Plaintiff filed this action on June 10, 2024.  ECF No. 1.  The parties consented to the
5  jurisdiction of the magistrate judge.  ECF Nos. 2, 11.  The parties' cross-motions for summary
6  judgment, based upon the Administrative Record filed by the Commissioner, have been fully
7  briefed.  ECF Nos. 14 (plaintiff's summary judgment motion), 16 (Commissioner's summary
8  judgment motion).  Plaintiff filed a reply brief in support of her motion on November 5, 2024.
9  ECF No. 17.

## II.  LEGAL STANDARDS

11       The Commissioner's decision will be upheld if (a) supported by substantial evidence and
12  (b) based on proper legal standards.  42 U.S.C. § 405(g); Lewis v. Astrue, 498 F.3d 909, 911 (9th
13  Cir. 2007).  "The findings of the Commissioner of Social Security as to any fact, if supported by
14  substantial evidence, shall be conclusive…."  42 U.S.C. § 405(g)).  Substantial evidence is
15  "'more than a mere scintilla'" but "less than a preponderance."  Bray v. Commissioner of Soc.
16  Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting Andrews v. Shalala, 53 F.3d 1035,
17  1039 (9th Cir. 1995)); Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012).  It means "such
18  relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Bray,
19  554 F.3d at 1222 (quoting Andrews, 53 F.3d at 1039); see also Richardson v. Perales, 402 U.S.
20  389, 401 (1971).
21       "While inferences from the record can constitute substantial evidence, only those
22  'reasonably drawn from the record' will suffice."  Widmark v. Barnhart, 454 F.3d 1063, 1066
23  (9th Cir. 2006) (citation omitted).  "The ALJ is responsible for determining credibility… and
24  resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).  "Where the
25  evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's
26  decision, the ALJ's conclusion must be upheld."  Thomas v. Barnhart, 278 F.3d 947, 954 (9th
27  Cir. 2002).  However, the court may review only the reasons stated by the ALJ in his decision
28  ////

"and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).

### III.  RELEVANT LEGAL AND REGULATORY FRAMEWORK

Supplemental Security Income ("SSI") is available to disabled individuals who do not have an eligible spouse and whose income does not exceed a specified threshold. 42 U.S.C. § 1382(a)(1)(A). The term "income" in this context means both earned and unearned income, and includes support and maintenance furnished in cash or in kind. 42 U.S.C. § 1382a(a); 20 C.F.R. § 416.1120, et seq. Income does not include money the claimant either borrows or receives as repayment of amounts the claimant previously loaned to someone else. 20 C.F.R. § 416.1103(f).

Social Security Ruling 92-8p[3] defines "loan" for SSI purposes. It states that either cash or the advance provision of in-kind support and maintenance is excepted from the calculation of income if it is the subject of a "bona fide loan." The ruling provides in relevant part:

> For purposes of determining when a loan is not considered income and when a loan is considered a countable resource under the SSI program, the following policies apply:
>
> 1. A loan means an advance from lender to borrower that the borrower must repay, with or without interest. A loan can be cash or an in-kind advance in lieu of cash. For example, an advance of food or shelter can represent a loan of the pro rata share of household operating expenses. This applies to any commercial or noncommercial loan (between relatives, friends or others) that is recognized as enforceable under State law. The loan agreement may be oral or written, as long as it is enforceable under State law.
>
> 2. Any advance an SSI applicant or recipient receives that meets the above definition of a loan is not income for SSI purposes since it is subject to repayment. Any portion of borrowed funds that the borrower does not spend is countable resource to the borrower if retained into the month following the month of receipt.
>
> 3. When money or an in-kind advance in lieu of cash is given and accepted based on any understanding other than that it is to be repaid by the receiver, there is no loan involved for SSI purposes. It could be a gift, support payments, in-kind support and maintenance, etc., and must be treated as provided for in the rules applicable to such items.

---

[3] "[Social Security Rulings] reflect the official interpretation of the [Social Security Administration] and are entitled to 'some deference' as long as they are consistent with the Social Security Act and regulations." Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006) (quoting Ukolov v. Barnhart, 420 F.3d 1002, 1005 n.2 (9th Cir. 2005)).

        4. If there is a bona fide loan as defined in (1) above, there is a rebuttable presumption that the loan agreement is a resource of the lender for SSI purposes.

SSR 92-8p, 1992 SSR Lexis 3.

      The Agency's Program Operations Manual System ("POMS")[4] further specifies that a bona fide loan must meet five criteria: (1) it must be enforceable under state law; (2) it must have been in effect at the time of the transaction; (3) it must acknowledge the obligation to repay; (4) it must establish a plan for repayment; and (5) repayment must be feasible. POMS SI 00835.482. If a loan meets these criteria, it is not treated as income for the purposes of SSI eligibility. The claimant bears the burden of demonstrating that the agreement constitutes a bona fide loan. SSR 92-8p, 1992 SSR LEXIS 3.

### IV. THE ALJ's DECISION

ALJ Smiley made the following findings:

        1. The claimant became eligible to receive SSI benefits as of the protective filing date of March 16, 2016.

        2. During the period of eligibility, the claimant had in-kind support and maintenance (20 CFR 416.1121(h) and 416.1130).

        3. The in-kind support and maintenance is not subject to an exception (20 CFR 416.202, 416.1100, 416.1130 *et seq*. and 416.1205).

        4. The claimant's in-kind support and maintenance during her period of eligibility affects her SSI benefits from April 2016 through November 2021 (20 CFR 416.410, 416.412, 416.1130, and 416.1205).

AR 16-21.

      The ALJ concluded that the ISM was not subject to an exception from income because it was not a loan. Specifically, the ALJ found that the agreement plaintiff had with her parents regarding rent did not qualify as a bona fide loan agreement because (1) it was not an advance that plaintiff "must repay," and (2) there was no plan or schedule for repayment. AR 20.

---

[4] POMS is "an internal agency document used by employees to process claims." Carillo-Yeras, 671 F.3d at 735; Lockwood v. Comm'r Soc. Sec. Admin., 616 F.3d 1068, 1072 (9th Cir. 2010) (same), cert. denied, 563 U.S. 975 (2011). POMS "does not impose judicially enforceable duties" on either the court or the ALJ. Lockwood, 616 F.3d at 1073. However, "POMS may be 'entitled to respect' under Skidmore v. Swift & Co., 323 U.S. 134 (1944), to the extent it provides a persuasive interpretation of an ambiguous regulation." Carillo-Yeras, 671 F.3d at 735.

## V.  ANALYSIS

### A.  The ALJ Did Not Apply an Incorrect Legal Standard Regarding the Existence of a Bona Fide Loan Agreement

Plaintiff "contends that the ALJ applied an improper legal standard in determining the requirements of a valid loan contract because California Civil Code Section 1912 states that establishing a valid loan contract only requires that there be an agreement to repay a loan between the parties in order to be enforceable under state law[.]" ECF No. 16 at 12.  The enforceability of a loan agreement under applicable state law is only one of the criteria for a "bona fide loan" in the SSI context.  The ALJ's opinion did not rest on a finding that the purported loan was unenforceable as a matter of state law.  Indeed, the ALJ did not expressly address the question whether there was a valid loan contract under state law, because she found two *other* POMS criteria to be lacking: an unconditional obligation to repay, and the existence of a plan for repayment.  AR 20.  Accordingly, to the extent plaintiff challenges the ALJ's determination on grounds of California law, the argument fails.  To the extent if any that plaintiff means to argue that the Social Security Act requires that the sole criterion for a loan exception to ISM as income is the enforceability of a contract under applicable state law, she provides no authority for the proposition and the undersigned is aware of none.

It is entirely unclear to the court whether plaintiff means to argue that the POMS criteria are themselves legally defective in some way and that the ALJ erred in relying on them.[5]  Absent any coherent argument on the point, the undersigned declines to consider the issue.  Rather, this court joins others which have assumed the validity of the POMS criteria at issue.  See, e.g., Michael L. v. Berryhill, 2019 U.S. Dist. LEXIS 143520 at *4, 2019 WL 3992270 (D. Ore., 2019);

---

[5] After reciting the five requirements set out by the ALJ with citation to POMS SI 00835.48(B) (see AR 20), and accurately setting forth the bases for the ALJ's ruling, plaintiff "notes that all of the five listed requirements are neither listed in the Code of Regulations, Rulings *or even in POMS memorandum, but rather constitute memoranda*." ECF No. 14 at 12 (emphasis added).  The undersigned does not understand what this means.  More importantly, plaintiff presents no substantive argument that the enumerated POMS criteria are anything other than permissible and reasonable agency interpretations of 20 C.F.R. § 416.1103(f) and Social Security Ruling 92-8p.

Tennyson v. Commissioner of Soc. Sec. Admin., 2024 U.S. Dist. LEXIS 113282 at *6-8, 2024 WL 3200699 (D. Ariz. 2024).

Plaintiff has identified no reliance by the ALJ on a legally erroneous standard, and therefore her motion must be denied on this point.

### B. Substantial Evidence Supports the ALJ's Decision

Plaintiff also challenges the ALJ's application of the "bona fide loan" standard to the facts of the case, arguing throughout that the ALJ's findings were not supported by substantial evidence.[6]

At the hearing, plaintiff testified that she had paid her deceased father about $400 in monthly rent from her salary until her 2011 injury left her unable to work. AR 19, 34. She further testified that she worried about her ability to pay rent until she verbally agreed in 2013 to repay her father "'if and when' she got SSI[.]" AR 19 (quoting AR 33). She admitted she did not know whether her father kept track of how much she owed, and that they never established a precise repayment schedule. AR 19, 35-36. After plaintiff's father died in 2020 and her brother moved in, her brother and mother calculated rent past due and reaffirmed plaintiff would repay this amount if and only if she received SSI. AR 19, 35-36. Plaintiff testified that she has since repaid $400 per month for a total of $16,000 based on these calculations, plus $600 she separately owed her brother, and that she currently owes nothing. AR 19, 36-38. The household also uses plaintiff's food stamps, valued at $140 per month, to buy food for the household. AR 38.

Lura Midwood, plaintiff's mother, testified that she and her late husband told plaintiff that "when and if you can pay us back, that would be fine, but we—we didn't really worry about it too much because we were concerned with her health." AR 41. When asked whether there was a specific repayment plan or "just a more general idea that she would pay you back if she was able

---

[6] In her opening brief, plaintiff argues generally that the evidence established the existence of a valid and enforceable loan agreement. She does not, however, specifically address the ALJ's actual findings of fact (on the issues whether there was an unconditional obligation to pay and whether there was a plan for repayment) until her reply brief. Although it is well established that issues not raised in an opening brief are waived, Indep. Towers of Wash. v. Wash., 350 F.3d 925, 929 (9th Cir. 2003), the court will consider the arguments presented in the reply under the general rubric of substantial evidence review.

to get some sort of money in the future," Ms. Midwood responded: "It was just pay us back when you can, you know." AR 41-42. Ms. Midwood also confirmed that after plaintiff was awarded SSI, they agreed plaintiff would pay $400 per month. AR 19-20, 42.

As previously noted, the ALJ found first that this evidence did not demonstrate that the purported loan was an advance that plaintiff "must repay," and second that there was no plan or schedule for repayment. AR 20. As to the first point, the ALJ emphasized that a repayment obligation must be unconditional to constitute a bona fide loan, and POMS specifically notes that it cannot hinge on eventual receipt of SSI benefits, as here. AR 20 (citing POMS SI 00835.482(B)(3)). Plaintiff's own testimony reasonably supports a finding that any obligation to pay back rent would arise under the agreement with her parents only if she was awarded SSI benefits. AR 33. Ms. Midwood's testimony also supported a conclusion that the ISM was provided without regard to whether or not it could or would eventually be repaid. AR 41 ("… when and if you can pay us back, that would be fine, but we—we didn't really worry about [repayment] too much…"). Accordingly, substantial evidence supported the ALJ's finding that there was no unconditional obligation for plaintiff to pay her parents back.[7]

In her reply brief, plaintiff raises a different challenge to the ALJ's finding that "the loan to the claimant was not an advance that she 'must repay' as required by SSA regulations." AR 20 (ALJ opinion); ECF No. 17 at 7 (plaintiff's reply brief). Plaintiff contends in part that "requiring an 'advance loan' in this case was unreasonable first because there was no initial advance from her father, and secondly she had been fired from her job and had no income to repay an advance…" ECF No. 17 at 7. The court is confused by plaintiff's focus here on the reference to "an advance," which seems to misunderstand the term. An advance is any provision of cash or ISM prior to any expectation of returns. This is why "an advance of food or shelter can represent a loan of the pro rata share of household operating expenses." Sharma v. Barnhart, 32 Fed. Appx.

---

[7] This is an entirely different question than whether, where there *is* an unconditional obligation, a plan to make payment from future benefits satisfies other elements of the POMS test. See, e.g., Tennyson, 2024 U.S. Dist. LEXIS 113282 at *13-16 (reversing ALJ's finding, in case with a written loan agreement, that there was no feasible repayment plan because plaintiff intended to repay his debt to his mother out of anticipated SSI benefits).

236, 238 (9th Cir. 2002) (quoting SSR 92-8p).  It is undisputed that plaintiff's parents provided her with food and shelter without any expectation of immediate payment.  AR 19-20, 35-36.  This was an "advance."  That plaintiff had lost her job and could not repay absent a future award of benefits does not mean that such food and shelter was not an advance; it only explains why the advance was necessary.  The existence of an advance is not a hurdle erected by the ALJ, it is the factual predicate for plaintiff's claim that the ISM was a loan.

As to whether plaintiff would ever repay the advance, that her mother said plaintiff could repay her at whatever pace was feasible implies that plaintiff might never repay her in sufficiently adverse circumstances.  As previously noted, this demonstrates that repayment was not categorically required.  Accordingly, the ALJ's finding of no unconditional obligation may not be disturbed.  Because the ALJ's conclusion on this point is sufficient to uphold the decision that the ISM constituted income, the court need not address the ALJ's findings regarding the absence of a repayment plan.

## VI.  CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 14) is DENIED;

2. The Commissioner's cross-motion for summary judgment (ECF No. 16) is GRANTED; and

3. The Clerk of the Court shall enter judgment for defendant, and close this case.

DATED: May 1, 2025

_/s/ Allison Claire_
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE